UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

United States of America,

                                                                        **Hon. Hugh B. Scott**

                          v.                                     13CV211A

                                                                              **Order**


James Mazzariello et al,
                              Defendants.
_____

      The government has filed a motion seeking a determination of whether a conflict of interest exists precluding Steven Cohen (and his firm) from representing any defendants in this case. (Docket No. 3). The government asserts that Cohen has intermittently represented all three defendants and several uncharged co-conspirators in this case. (Docket No. 3 at ¶3). The government also contends that Cohen is a trial witness. (Docket No. 3 at ¶ 3).

      With respect to the attorney-witness issue, the government contends that Cohen should be disqualified pursuant to the advocate witness rule because he made statements to the news media on 12/6/2012, 12/12/2012, 4/27, 2013 and 8/11/2013. (Docket No. 3 at ¶ 7). More specifically, the government (Docket No. 20) alleges that Cohen made the following statements to the media:

> 1.   Following the execution of a search warrant at Jim Mazz Auto, Cohen is quoted in a YNN report dated December 6, 2012, "This is going to be a torpedo that circles around and hits the ship that fired it," Cohen said. "Now that everyone is on this, they're going to see what parking enforcements been up to." Cohen said Jim Mazz tow truck drivers haven't been involved in bribes in years; well past the statute of limitations. (See, YNN report attached as Docket No. 20 Exhibit "A").
>
> 2.   Cohen is quoted in a WGRZ report dated December 12, 2012, "Steve

> Cohen, Jim Mazz attorney: 'My guy's been out of that, he's been out of the whole bribery business for years.' Scott Brown: 'Are you saying your client bribed Buffalo police officers in the past, but hasn't done it in a while?' Steve Cohen: 'I'm saying many years ago our tow truck drivers were put in the position by police officers that if you want to get this tow you better hand us a twenty dollar bill or a fifty dollar bill.'" (See, WGRZ report attached as Docket No. 20 Exhibit "B").

3. Cohen is quoted in a WGRZ report dated March 8, 2013, "Years ago my client was required to pay police officers, as are the other tow companies, and he in putting a stop to it said, 'I'm not doing this anymore, and I want the city to do something about it,' and as a result of that, some high ranking police officials got pretty irritated and started to come down on Jim Mazz Auto." (See, WGRZ report attached as Docket No. 20 Exhibit "C").

4. Cohen is quoted in a Buffalo News report dated August 11, 2013 where he characterized payments by Jim Mazz Auto tow truck operators to Buffalo police officers as a "shakedown." "It basically was a matter of officers saying, 'If you want to bring home money to put bread on the table for your family, you have to pay me first.' It was more than just taking bribes. It was a shakedown." Cohen acknowledged that Jim Mazz Auto drivers have paid bribes in the past. (See, Buffalo News report attached as (Docket No. 20 Exhibit "D").

The defendants argue that Cohen is not a witness and that the statements he made to the media constitute Cohen's "opinion" regarding what he asserts were "pay to play" shakedowns by various police officers and not "evidence". (Docket No. 16 at ¶¶39-42). Cohen states that he has not personally witnessed his client being threatened by a police officer or Buffalo City official, nor has he ever personally witnessed his client making any payments to any police officer or Buffalo City official. (Docket No. 22 at ¶¶4-5).

As a general matter, in determining when disqualification of counsel is required under the advocate-witness rule, the Second Circuit is guided, although not bound, by the New York Code of Professional Responsibility, which states, in Disciplinary Rule 5–102(d), that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a

> lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw acting as an advocate before the tribunal.

United States v. Locascio, 357 F.Supp.2d 536 (E.D.N.Y.,2004), N.Y. Comp.Codes. R. & Regs. tit. 22 § 1200.21(d) (2004); Renner v. Townsend Fin. Servs. Corp., 2002 WL 1013234 at *6 (S.D.N.Y. May 20, 2002); Paramount Communications Inc. v. Donaghy, 858 F.Supp. 391, 394 (S.D.N.Y.1994); United States v. Wallert, 733 F.Supp. 570, 572 (E.D.N.Y.1990). However, courts have made clear that motions to disqualify counsel, in particular motions under the advocate-witness rule, are viewed with disfavor because of their interference with a defendant's right to choose his own counsel and their "strong potential for abuse." Paramount 858 F.Supp. at 394 (courts require party seeking disqualification to meet a "high standard of proof" before disqualification may be granted); United States v. Tate & Lyle N. Am. Sugars, Inc., 184 F. Supp 2d 344, 346 (S.D.N.Y.2002)("[T]he drastic remedy of disqualification based on the advocate-witness rule is subject to strict scrutiny because of the strong potential for abuse to 'stall and derail the proceedings, redounding to the strategic advantage of one party over another.' ") citing Fulfree v. Manchester, 945 F.Supp. 768, 770 (S.D.N.Y.1996) ("[M]otions to disqualify opposing counsel are viewed with disfavor because they impinge on parties' rights to employ the counsel of their choice."); Russo v. Friedman, 1992 WL 196791 at * 9 (S.D.N.Y. July 31, 1992) (calling for "particularly strict scrutiny"); Lamborn v. Dittmer, 873 F.2d 522, 531 (2d. Cir.1989) (Motions to disqualify counsel are subject to "fairly strict scrutiny, particularly motions under subdivision (B)," because "the courts must guard against tactical use" of such motions). "The party bringing the motion for disqualification carries the burden to show both the necessity of the testimony and the substantial likelihood of prejudice." Soberman v. Groff

Studios Corp., 1999 WL 349989, at *7 (S.D.N.Y. 1999). "A finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. Testimony may be relevant and even highly useful but still not strictly necessary. In cases where the lawyer's testimony is highly relevant and solely within [his] possession, it is apparent that [he] must be disqualified." Stratavest Ltd. v. Rogers, 903 F.Supp. 663, 667 (S.D.N.Y.1995). "[T]he moving party 'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur.'" Fulfree, 945 F.Supp. at 770 (S.D.N.Y.1996) (quoting Genentech, Inc. v. Novo Nordisk A/S, 923 F.Supp. 61, 63 (S.D.N.Y.1996)). "For testimony to be 'prejudicial' within the meaning of DR 5–102[ (D) ], the projected testimony 'must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting the testimony.'" Amalgamated Services and Allied Industries Joint Board v. Supreme Hand Laundry, Inc. et al, 1996 WL 583351, at *6 (S.D.N.Y. 1996) (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir.1989)).

Although the government contends that it desires to call Cohen as a witness to elicit testimony evidencing the fact that payments were made by the defendants to police officers – one of the elements of the charges – Cohen has represented that notwithstanding his comments he has no personal knowledge of any such payments being made by the defendants to police officers or city officials. (Docket No. 22 at ¶ 5). In any event, the government has failed to demonstrate the necessity of having Cohen testify in this case. Initially, the Court notes that the fact that payments were made to police officers or city officials may not be in dispute in this case. The defendants assert that Cohen expects to repeat these allegations in his opening statement (Docket No. 16 at ¶40) – thus, it is not clear that such testimony would be prejudicial to the defendants.

Notwithstanding, the government has not represented that it cannot present evidence to establish the fact of such payments absent the testimony of Cohen. Indeed, the fact that this case was indicted without the testimony of Cohen suggests that the government is in possession of other evidence of such payments being made. The government has not demonstrated that the comments made by Cohen make him a witness requiring his disqualification as counsel in this matter.

The Court must still address whether Cohen's prior representation of multiple defendants in this case creates a conflict of interest requiring his disqualification. A hearing to inquire into the this issue shall take place on December 11, 2013 at 10:30 a.m. before the undersigned.

So Ordered.

/s/ Hugh B. Scott<br>United States Magistrate Judge<br>Western District of New York

Buffalo, New York
November 26, 2013